Will the clerk please call the next case. 116-1964, Lexington. Good morning, Justices. My name is Anthony Kuga. Phil is my associate in helping prepare the briefings. I also just got sworn in recently. Thank you for having us. Thank you. Also, this is Mark. This case is not unlike the one you just decided, except for the fact that we don't have a battle of the experts in this case. So we haven't decided yet. Well, I'm sorry, her. I'm sorry, her. In this situation, what we have is, this is a completely accepted case for almost a little over two years. The man gets hurt, and he makes a report that says, I got hurt while I was changing my clothes. And this has been accepted by the company clinic. And then the company clinic refers Mr. Yarger to Dr. Rabin, a neurosurgeon. Dr. Rabin treats him conservatively to the point where he decides that surgery is required. In the meantime, the employer sends Mr. Yarger for the first of two independent medical evaluations by Dr. Goldberg. Dr. Goldberg confirms, this is a causally related case. The arbitrator, in what occurred in the situation, became fixated on changing his clothes. Now, in our group, we said the Bellwood case, Bellwood-Bellwood-Nursing Home case. I think that case is identical on all points in this situation here. That person changed out of her uniform, and then noticed a back injury. In our situation, our client changed out of his work uniform in the company locker room, and then noticed his problems started again. But look at the facts in this case. You can't separate the logic and the facts as the arbitrator tried to slither away. He works in a factory. The factory, by the company's two witnesses, both agree, this is a company that you have to work, you have to be able to lift 75 pounds of work in it. That shows the company's expectation is, it's at least a heavy duty type of position. Look at what the job description was. He has to take material from a quarry, transfer it onto a cart, transfer it by pushing, physically pushing that cart to this slithering machine, and then place it in position, put a shaft in there that weighs, in some situations, 20 pounds, in some situations, 45 pounds. And this is done all day long. He has to change, depending on the size of the order, the roles have to be changed four times per hour, sometimes a little more. Well, are you saying that the act speaks for itself? I mean, there has to be, I don't think anybody is going to challenge the facts of his job. But let me ask you something that I think is particularly troubling here with regard to Dr. Rabin's testimony. I'm going to ask you some questions about that. Is it true that specifically during his November of 2014 deposition, Dr. Rabin testified Claimant's back condition was causally related to Claimant's repetitive work, yet in his August 2014, Rabin attributed Claimant's back injury solely to the clothes changing incident? Those are all true statements, Your Honor. Well, you can see why the commission would be troubled by it. And I understand it. And when I ordered a narrative report from the doctor, the only thing I interjected in that narrative report was the job description that Mr. Yarg represented to his doctor. That job description was also viewed by both companies' representatives that a large part of that job description was true. There wasn't anything in there that says it was not true. There are some slight differences of it. The Mr. Carlson who works there says, yes, you have to exert some force. Yes, it is a heavy job. Yes, we have to transfer these roles on a repetitive basis. That narrative report and the job description was given because the doctor didn't have a complete factual description of the job.       And it's so obvious that work activities have nothing to do with the findings. Well, but if that's true and it's your burden, you can see, I mean, the commission felt it's not clear what particular work activities Rabin found caused the Claimant's condition of ill-being because he seemed to be confused. Direct contradiction. So doesn't that weigh against his testimony at all? Yes. Rabin's testimony? Yes. Well, I think all it does is it highlights or heightens his testimony because now you have the arbitrator fixated on just changing the clothes. Anybody in the world would say, well, just changing their clothes, just changing their clothes is not going to cause permanent deaths. Because that's what Rabin said in his report. That's all he was asked in the beginning of this case. That's all that he gave when he, when Mr. Yarger first made his answer in court. What happened? My back hurt when I changed my clothes. Did anybody ask him from the medical doctor's opinions, what kind of work do you do that gave you a herniated disc? I think it's kind of a bad question in this kind of situation. Hold on a second. Yes. What actually did Rabin say? What was his opinion? What was Rabin's opinion? Well, what he said was the job description cost contributed or aggravated. Did he actually say it cost or did he say, as far as whether his work as a machinist can contribute to the injury, certainly the stress and strain of working could contribute and exacerbate a condition. The repetitive lifting and handling of the material would contribute to his back injury and was likely the source of it. Did he actually render an opinion that this did cause his injury or did he merely render an opinion that says repetitive activity could cause his injury? You are correct. Well, yes. Now we get to the question of how was he actually injured? And his testimony says that when he sat down, he felt a sharp pain in his lower back that went down his right leg. And the commission turned around and said, well, wait a minute. He's told us how he got injured. He got injured sitting down. The fact that Rabin said he could have been injured by this repetitive work doesn't establish that he was. When there's evidence directly relating the act of sitting to the injury for which he seeks compensation. And I certainly understand and I agree with your concerns. But do you take that whole situation out of the job context or do you look at the job context? And I think that's what Rabin did. And I think that's why Rabin felt his totality of circumstances contributed to his work injury. How do you get away with this? There has to be some affirmative activity. That's what I'm thinking of this. Yes, Your Honor. Let me just read from the other commission's decision here. You tell me what it says is accurate or inaccurate in terms of what the evidence reflected. It stated that notably the medical records during this two-year period, meaning the two-year period following the claimed injury, reflect Petitioner's own handwritten reports as well as the histories noted by various medical providers that Petitioner reported that his pain began during the close changing incident. The record is devoid of any general, much less specific, reference to an onset of pain or other symptoms during the work day as asserted by Petitioner for the first time at trial. Is that accurate or inaccurate? Not the first time at trial. That was a statement given to, the job description was given to the treating doctor. The treating doctor took a totality of what this man's job duties were, Your Honor. And you just can't look at it as an isolated circumstance. That's what the Supreme Court did in the Bellman case, the Peoria Bellman nursing home case. You have people that are changing or helping assisting elderly people all day long. At the end of the day, they changed their uniform. They had an injury. And that's when the condition manifests itself. And I believe that's what occurred in the situation here. See, here's the problem. You just said when they change their uniform, they have an injury. That's what the commission did here. They circumscribed the activities of the claimant and linked that to, and said that was the injury. Okay. And you just said it against your own. You said when he changed his uniform back to Bellwood, he had an injury. And that's, I think, the gist of your argument is that you can't circumscribe the claimant's activities to just changing clothes. You want us to go back where the commission should have gone back and considered or the expert, or the expert, all of the preceding activity. Your Honor, you don't have any medical discrepancies. You don't have a petitioner's doctor versus an employer doctor in conflict with one another. But you don't have a petitioner's doctor rendering an opinion as to the cause of the injury. And I'll just make a simple example. A doctor testifies that, in my opinion, within a reasonable degree of medical certainty, getting struck by an automobile can cause a break in your leg. It's still the petitioner's burden to prove that it was being struck by an automobile that caused the break in his leg. The doctor can only say it could have been. He didn't see it. Well, in this particular case, Raven only said the repetitive work could cause. And then the petitioner sits there and testifies and says, I got hurt when I sat down. Well, he also said, I noticed some pain while I was working that day. He also said he did testify to that. He did testify to that. Before he changed his clothes, he said he testified. Yes, yes. Now, if you look at the petitioner's testimony during the trial before the arbitrator, I spent probably about 30 pages just talking about the facts of his employment, his actual official job duties. And that was not controverted by the importers. Both witnesses agreed, yes, these are, in large part, this man's job duties. What the arbitrator, in my view, did was focus on one act and said, okay, you possibly cannot get a herniated disc from changing your clothes. But she disregarded the effects of the job for that particular day. And when you take into consideration all of these events, that's what Raven did. Raven said, looking at these, the changing of the clothes and the work of these, yes, I agree. What was his condition before the date of the event? Did he have any back problems? No. Okay. There was no back problems. Hold on. You have a man that has no back conditions prior to the date of the event. Then you have a doctor who says, and everybody agrees that he does all this repetitive work. You then have a doctor who agrees and says this repetitive work could cause a back condition. And then you have him saying, well, when I sit down, I felt the pain. And the arbitrator finds sitting down could not cause the injury that you have. Is that right? You've summarized it. Is there any evidence as to what did cause his injury? Of course. Other than the fact that under a chain of events theories, he had nothing wrong with him before today. And after today, he's got something wrong with him. And evidently, according to the arbitrator, sitting down isn't what caused it. There's nothing else that took place. That's what the facts are in this case. He had no prior back injury, no history of back injury, no prior memorizing, no prior history of any accidents. And the only thing that you have here is the work duties as well as changing his clothes. Now, I'm sure if the man would have been a little bit more thinking that his description of how he got hurt would be before he had pulled out of court, he might have been a little bit more thorough in writing it down. Well, here's what I did all day long. I wish all of us, as petitioners and lawyers, would have clients who would actually take notes and say, here's what I did all day and here's what specifically happened to me. It's like when we represent construction workers. These guys are getting pounded all day long. They're lifting, they're carrying, they're bending, they're twisting. I've talked to them, and I'm sure you get, your honors have heard these kinds of facts before. Construction workers, if they stop the job, they can file an extra report every hour, but that's not practical. They would never be able to work. In this situation here, sure, the right thing would have been for Mr. Yarger to stop his work, go fill out a report, but he didn't want to do that. He wanted to continue working to the point where he couldn't continue working. He didn't know at that time that this was going to come back to be a legal issue for him. But what we have here is the combination of the events, the totality of the circumstances, this case is right on point with the Bellman case, a cause, and a repetitive work is another cause. And you don't have a medical doctor from the respondent that says, no, this, either one of the activities did not cause Mr. Yarger to have a radiated disc. And the only time this case became a problem, and this is what the records show, is first surgery cover, 100 percent. All the treatment cover, 100 percent. It's when Dr. Graydon said, I want to do a second surgery, that the case not became challenged. That's the only problem in this situation. And I submit that there is sufficient evidence that this is a cause of action. This is a cause, and this is a work-related injury, and I believe the arbitrator's decision and the commission's decision was to cast a net of sway over the totality of the evidence. But looking at it blindly in one wire, I think it's just not fair. It's not the law. Thank you, Your Honor. If I have a couple minutes, I'll reserve them. You're entitled to five minutes in reply. Thank you. Counsel, you may respond. May it please the Court. Counsel, I'm Nicole Schnoor, the attorney for Kirkpatrick. So, as we all know, the question today is simple. Is the commission's decision against the manifest way that that is? I think that there's ample evidence in the record that supports the commission's decision that the lower back condition is not related to the repetitive job duties. What's that evidence? I'm sorry? What's that evidence? First of all, the medical evidence. The medical records for two years report one consistent accident history. He injured his lower back while changing his clothes. Nowhere in these medical records does Appellant ever say, this incident occurred due to my repetitive job duties or that I felt pain during my shift. He had multiple opportunities to actually complete forms that asked him to describe how did your injury occur and turn those into his doctor's. And each time, he wrote, my injury occurred due to changing my clothes. He never once indicated it was due to his job duties. What do you make of my reading? Did he actually say due to? I believe a few of his statements that he, in quotes, I was changing out of my uniform and pulled something. It was tough to put my shoes on. It was sore the rest of the day. When I woke up the following morning, I could barely stand on my own. He later says, actually, when he was going to see Dr. Rabin, who completed another intake form, I was changing after work and pulled something in my back. I could barely stand up. Now the pain goes from my back down my leg. So the better statement and more accurate was that I pulled something when I changed my clothes. And that may be. But due to is a conclusion. Oh, excuse me. Yes. He experienced the symptoms or strained or pulled something. Well, I don't think you want to go and say experienced either because that's a delayed issue that could go back to the activities prior. I guess. Your strongest argument is pulled. I could say that the statements you made were those that he pulled something in his back while changing his clothes. What do you make of Rabin's testimony? I mean, is that really helpful to the claimant? Didn't the commission feel that he had sort of misunderstood and contradicted himself? I think Dr. Rabin's testimony is completely contradictory. When you look at the medical records, his narrative reports, as well as his testimony himself, Dr. Rabin testified that it was his understanding for two years that the mechanism of injury was symptoms or, excuse me, the lower back injury that occurred while changing his clothes. It was not until he received a written job description that appellant composed from counsel where he was first posed the question as to whether the job duties could have any correlation with the lower back condition. And at that point, if you look at the narratives that were in response, the narratives indicate that the injury occurred due to the clothes changing incident. But then during his testimony, he starts to say, well, you know, maybe there could be a contributory factor due to the job duties. But at the end of the day, what we have is two different opinions from Dr. Rabin that contradict each other. We have an opinion from Dr. Goldberg, who is the respondent's section 12 examiner, who says all along that the lower back condition was causally related to this clothes changing incident. Now, it was up to the commission to decide whether they believed that appellant met his burden of proof that he sustained a repetitive trauma injury. And the commission found that he didn't, that he did not meet that burden. What was the basis for Goldberg's view that the activity of changing clothes created the condition? Dr. Goldberg discussed the mechanism of injury with appellant. And in the report, it indicates that he was changing his clothes and he experienced the onset of the lower back pain. And Dr. Goldberg opined that that was a competent mechanism of injury to have caused the lower back condition. He did not elaborate much further on, you know, the exact way that somebody must turn or even sit, but I think we all know that there are instances where people can have a relatively minor movement and can experience a lower back injury. Well, we may all know that, but an expert is supposed to have a basis for their opinion. Yes, and I think that... The inadequacies of it is what needs to be argued or the adequacies of it. But I also think that we have an opinion of Dr. Raven himself who said that we have, that the clothes changing incident could also be a competent mechanism of injury to cause this lower back condition. So we have... that the claimant told him that on September the 24th, 2012, he was changing his clothes at his work facility to go home and then stated that when changing his pants, he developed lower back pain and reported that he subsequently saw a company physician and was told he had a lumbar strain. That's a direct quote from Goldberg. So Goldberg was told by the claimant how he was injured. Yes. So his opinion is not based upon, you know, the counsel, you know, without basis. It's based upon what the claimant told him. That's correct. And the claimant never was told, Dr. Goldberg, according to his report, that I injured my back doing my job duties. That is what he indicated. I injured my back while performing that action. And I also think that... Which is what you want your expert to say. Yes. Well, at the end of the day, the question is, is it a repetitive trauma injury due to the job duties? And the commission reviewed all of this. They also reviewed the supervisor's report of injury that was composed by Dan Carlson. He's one of the individuals who testified at trial. That report of injury indicates that the lower back injury occurred while changing his clothes. Appellant signed that document. He signed it. And nowhere on there does it indicate, well, actually, I experienced, you know, symptoms before during my shift and again thereafter. He had that opportunity. He signed it. And there's only one history of injury or mechanism of injury that's listed on there. And this new theory emerged late in the game, you're saying? The new theory emerged two years after the incident. It emerged after his case was denied. It was at that point. Yeah, but, I mean, Raven gave an explanation as to why that is. The fact of the matter is, though, the commission didn't believe him. Raven said that he only came up with the business about repetitive trauma because he never received any information as to what the man's job duties were until October of 2014. And it was then that he came up with his position that the job duties could cause the injury. The fact of the matter is that the arbitrator, in his opinion, writes down that he doesn't find persuasive Raven's testimony based upon the consideration of the record as a whole. Raven explained why it happened. The arbitrator just didn't believe him. I would also argue that the reason why he never had that information was because it was irrelevant. It was irrelevant for two years what his job duties were because nobody had ever said that it was the job duties that caused this condition. All along, it was the same consistent explanation. The lower back pain began while he was changing his clothes. And so there's no reason, I think, for that to even be addressed. And not only that, if there was ever a question as to whether the job duties were actually relevant, then certainly Appellant would have had the opportunity himself to pose that to his doctors or to list on those written statements that, yes, here is also a contributing factor to the condition, but he never did that. Further, when we talk about the job duties themselves and repetitive trauma, Appellant would show that not only is the job repetitive, but that there's a causal connection. And the commission found that he failed to meet that burden of proof. We also had a testimony of Chris Gilbert and Dan Carlson, both who testified that that job description was not accurate, that there were multiple parts of that job description that they disputed. They further testified that the job's not repetitive in nature. I think all of these things taken together, especially the complete absence of any discussion of his job duties for two years and the conflicting opinion of Dr. Rabin, but then also the opinion of Dr. Goldberg, who supports that this incident occurred, or excuse me, the lower back incident occurred while he was changing his clothes, is fully supported by the evidence. I do not feel that the commission's decision is against the manifest weight of the evidence, and certainly all of this here today supports that finding. Thank you, Counsel. Thank you. Counsel, you may reply. Well, I'm glad that Ms. Schnoor brought up the fact that the job description was never issued until the employer decided to deny the claim. At that point, what's the petitioner supposed to do? He has to defend himself. For two years, it never was an issue. Had it become an issue, the employer could have raised it early on. After the first surgery, they could have raised it. Before the second or third injection, they could have raised it. The employer could have raised it. Why did they wait until now to meet a second surgeon to raise it? So not that I'm saying that the employer has got some culpability in this situation, but it never became an issue until there was a denial of this case. The other thing, you know, if the employer, they had ample opportunity before I ever got involved with this case to sit down with this man and say, okay, really, what happened here? They could have gotten it, whether or not he was hurt somewhere else or with some other family. Why would they do that? As I'm listening, I mean, they're going to say the claimant himself delineated specifically what the mechanism of injury was. Why did they need to challenge that? Why would they challenge a second surgery?  But he gave the narrative. He delineated what caused his injury. Well, you're assuming that the petitioner knows the legal standard for what's required to be approved in a worker's compensation. Hey, so I hurt myself changing. Well, that's what he thought at the time. And then when it came up as an issue that the employer says, well, no, you couldn't possibly hurt yourself while changing your clothes. Then he said, he had a conversation with a doctor and said, here's what I really do, I prepare a job description. I don't think that's anything illegal or improper or immoral. Well, I'm not saying it is, but you're putting the burden on the employer to come in and start challenging his description immediately. I'm not putting the burden on the employer, but I'm going to give you an explanation of how this job description came into existence. The other factor here, too, is I've said some cases alone. I think the major case here is the Belmont Peer and Nursing Home case where you have the same kind of circumstances. The other issue that I've said here is he's in a company-designated locker room. He's wearing a company-designated uniform. He's changing his clothes. He feels the pain in the back. That's also part of that comfort doctrine, which should still be put into the situation where the case is compensable. But I think this court, when you look at the entirety of the record, you will come to the same conclusion. In this case, the decision of the commission was against the manification of the evidence because they discounted the testimony of two doctors. They discounted the testimony of even Dr. Goldberg. They didn't take the job description and give it to Dr. Goldberg and say, by the way, can you give us an opinion that this man's work duties did not contribute to it? No. The only medical evidence is Reagan that says changing of clothes is a competent contributor to his work injury. And then Reagan says not only changing his clothes, but the job duties that he does is a competent contributor to his work injuries. And Goldberg says in two instances, not one, two, changing his clothes is a cause. And that's, I think, what the arbitrator should consider and discounted that. I think this court here has ample information. When you look at it with the totality of everything, I think that this case should be compensable. Thank you for your time. Thank you, counsel, both for your arguments in this matter. We'll be taking an advisement and a written disposition shall issue.